1   Ira Spiro, State Bar No. 67641
    ira@spirolawcorp.com
2   Jennifer L. Connor, State Bar No. 241480
    jennifer@spirolawcorp.com
3   **SPIRO LAW CORP.**
    11377 West Olympic Boulevard, 5th Floor
4   Los Angeles, California 90064
    Telephone:  310-235-2350
5   Fax:          310-235-2351

6   Joseph J. Gigliotti, State Bar No. 144979
    gigliottilaw@msn.com
7   **GIGLIOTTI & GIGLIOTTI, LLP**
    26501 Rancho Parkway South, Ste. 101
8   Lake Forest, California 92630
    Telephone:  949-305-8202
9   Fax:          949-305-8239

10  Attorneys for Plaintiff SIDNEY ELLIOTT
    and the putative Plaintiff Class

11

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15  SIDNEY ELLIOTT, individually, and on        Case No. SA CV11-1730 DOC (ANx)
    behalf of all others similarly situated,
16                                              CLASS ACTION
                    Plaintiff,
17                                              **PLAINTIFF'S REVISED MOTION
                                                FOR PRELIMINARY APPROVAL;
18          v.                                  MEMORANDUM OF POINTS AND
                                                AUTHORITIES**
19  ROLLING FRITO-LAY SALES, LP,
    FRITO LAY, INC., FRITO-LAY              [Declarations of J. Connor, S. Elliott,
20  SALES, INC., and DOES 1-10,            and J. Gigliotti and [Proposed] Order
    inclusive,                             filed concurrently herewith]
21
                    Defendants.            Hearing:
22                                         Date:    December 23, 2013
                                           Time:    8:30 a.m.
23                                         Crtrm:   9-D

24
                                           Date Action Filed: November 9, 2011
25                                         Trial Date: August 16, 2014

26

27

28

# **TABLE OF CONTENTS**

Memorandum of Points And Authorities ............................................................ 1

I.     INTRODUCTION ..................................................... 1

II.    NATURE OF THE LITIGATION ...................................... 4

    A.  Plaintiff's Legal Claims ..................................... 4

    B.  Plaintiff's Factual Claims .................................. 5

    C.  Defendant's Denial Of Liability ........................... 7

III.   SUMMARY OF SETTLEMENT TERMS .............................. 8

    A.  Conditional Certification Of Settlement Class ............. 8

    B.  Award To Class Members .................................. 9

    C.  Notice To Class Members ................................ 10

IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .. 11

    A.  Standards For Preliminary Approval ....................... 11

B.     The Proposed Settlement Satisfies The Requirements For Preliminary Approval ...................................................... 13

      1.  The Settlement Negotiations Occurred At Arm's Length ........ 13

      2.  The Settlement Is Within The Range Of Possible Approval .... 14

        a.  The Amount Of Recovery Is Reasonable And Adequate .... 14

          (i)  The Unchartered Legal Territory Of Califronia's MCA Exemption ......................................................... 14

          (ii)  Meal And Rest Break Claims Must Be Evaluated Against The *Post*-Brinker Authority And Time Records Showing Breaks ................................................................ 17

        b.  The Class Reprsentative Payment Is Reasonable ................ 21

        c.  The Agreed Upon Fees And Costs Are Reasonable ........... 23

SPIRO LAW CORP.

V.    PLAINTIFF'S CLAIMS MERIT CONDITIONAL CERTIFICATION  . 24

      A.  Numerosity  ........................................... 24

      B.  Commonality And Predominance Of Common Issues  ...................... 25

      C.  Typicality ............................................ 27

      D.  Adequate Representation  ................................. 28

      E.   Superiority  ........................................... 29

VI.   THE SETTLEMENT PROVIDES FOR A COMPREHENSIVE NOTICE

      PROGRAM  ........................................... 31

      A.  The Form And Method Of Class Notice Should Be Approved  ......... 31

      B.  The Court Should Schedule A Final Approval Hearing ..................... 34

VII.  CONCLUSION  ....................................... 35

SPIRO LAW CORP.

# TABLE OF AUTHORITIES

SPIRO LAW CORP.

FEDERAL CASES

Amchem Prods. Inc. v. Windsor,
   521 U.S. 591, 138 L.Ed.2d 689 (1997) ...................................................... 25, 28

Billings v. Rolling Frito-Lay Sales, L.P.,
   (S.D. Tex. 2005) 413 F. Supp. 2d 817 .......................................................... 15

Cal.  Rural Legal Assistance, Inc. v. Legal Servs. Corp.,
   917 F.2d 1171 (9th Cir. 1990)......................................................................... 28

Cerutti v. Frito-Lay, Inc.,
   (W.D. Pa. 2011) 777 F.Supp.2d 920 .............................................................. 17

Class Plaintiffs v. City of Seattle,
   955 F.2d 1268 (9th Cir. 1992).......................................................................... 12

Clesceri v. Beach City Investigations & Protective Services, Inc.,
   2011 WL 320998 (C.D. Cal. 2011)................................................................. 30

Eisen v. Carlisle & Jacquelin,
   417 U.S. 156, 9 40 L.Ed.2d 732 (1974) ......................................................... 31

Gardner v. GC Services, LP.,
   2012 WL 1119534 (S.D. Cal. 2012) ............................................................... 23

Garza v. Smith Intern. Inc.,
   (S.D. Tex. 2011) 2011 WL 835820.................................................................. 16

Hammon v. Barry,
   752 F. Supp. 1087 (D.D.C. 1990) ................................................................... 11

Hanlon v. Chrysler Corp.,
   150 F.3d 1011 (9th Cir. 1998)............................................................... *passim*

Hanon v. Dataproducts Corp.,
   976 F.2d 497 (9th Cir. 1992)........................................................................... 28

Hernandez v. Alpine Logistics, LLC,
   (W.D.N.Y. 2011) 2011 WL 3800031 ............................................................. 16

Hopson v. Hanesbrands Inc.,
   No. CV-08-0844, 2009 WL 928133 (N.D. Cal. April 3, 2009) ...................... 21

In re Armored Car Anti-Trust Litigation,
   472 F.Supp. 1357 (N.D. Ga 1979) ................................................................. 11

In re Immune Response Securities Litigation,
   497 F.Supp.2d 1166 (S.D. Cal. 2007) ...................................................... 13, 14

In re Mercury Interactive Securities Litigation,
   618 F.3d 988 (9th Cir. 2010) .......................................................................... 24

In re Traffic Executive Ass'n – Eastern Railroads,
   627 F.2d 631 (2d Cir. 1980) ........................................................................... 14

In re: SmithKline Beckman Corp. Sec. Litig.,
   751 F.Supp. 525 (E.D. Pa. 1990) ................................................................... 22

Ingram v. The Coca-Cola Co.,
   200 F.R.D. 685 (N.D. Ga. 2001) .................................................................... 21

Lerwill v. Inflight Motion Pictures, Inc.,
   582 F.2d 507 (9th Cir. 1978) .......................................................................... 28

Linney v. Cellular Alaska Partnership,
   1997 WL 450064 (N.D. Cal. 1997) ................................................................ 13

Local Joint Exec. Board Of Culinary/Bartenders Trust Fund v. Las Vegas Sands,
   Inc.,
   244 F.3d 1152 (9th Cir. 2001) .................................................................. 29, 30

Morris v. Lifescan, Inc.,
   54 Fed. Appx. 663 (9th Cir. 2003) ................................................................. 24

Mullane v. Central Hanover Bank & Trust, Co.,
   339 U.S. 306, 94 L.Ed. 865 (1950) ................................................................ 31

SPIRO LAW CORP.

SPIRO LAW CORP.

Murillo v. Pac. Gas & Elec. Co.,,
     226 F.R.D. 468 (E.D. Cal. 2010) .................................................................. 11
Navarro v. Servisair,
     2010 WL 1729538 (N.D. Cal. 2010).............................................................. 21
Officers for Justice v. Civil Service Commission of City and County of San
     Francisco,
     688 F.2d 615 (9th Cir. 1982)................................................................. 12, 13
Pridd v. Edelman,
     883 F.2d 438 (6th Cir. 1989)....................................................................... 12
Cal.  Rural Legal Assistance, Inc. v. Legal Servs. Corp.,
     917 F.2d 1171, (9th Cir. 1990) ................................................................... 26
Silber v. Mabo,
     18 F.3d 1449 (9th Cir. 1994)....................................................................... 31
Six Mexican Workers v. Arizona Citrus Growers,
     904 F.2d 1301 (9th Cir. 1990)..................................................................... 23
Sommers v. Abraham Lincoln Federal Savings & Loan Association,
     79 F.R.D. 571 (E.D. Pa. 1978) ................................................................... 11
Staton v. Boeing Co.,
     327 F.3d 938 (9th Cir. 2003).........................................................12, 13, 22
Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,
     489 U.S. 782, 103 L.Ed.2d 866 (1989) ....................................................... 23
Torris v. Tucson Elec. Power Co.,
     8 F.3d 1370 (9th Cir. 1993) ........................................................................ 23
Valentino v. Carter-Wallace,
     97 F.3d 1227 (9th Cir. 1996)....................................................................... 29
Van Vranken v. Atlantic Richfield Co.,
     (N.D. Cal. 1995) 901 F.Supp. 294 .............................................................. 21

SPIRO LAW CORP.

Vasquez v. Coast Valley Roofing, Inc.,
   226 F.R.D. 482 (E.D. Cal. 2010) .................................................................. 23

Veliz v. Cintas Corp.,
   (N.D. Cal. 2009) 2009 WL 1107702 ........................................................... 15

Vizcaino v. Microsoft Corp.,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................... 23

Wamboldt v. Safety-Kleen Systems, Inc.,
   2008 WL 728884 ........................................................................................... 15

Wang v. Chinese Daily News,
   231 F.R.D. 602 (C.D. Cal. 2005) ................................................................. 24

Yeagley v. Wells Fargo Co.,
   2010 WL 601460 (9th Cir. 2010) ................................................................. 23


STATE CASES

Bell v. Farmers Ins. Exch.,
   115 Cal.App.4th 715 (2004) ........................................................................ 22

Brinker v. Superior Court,
   (2012) 53 Cal.4th 1004 ................................................................................ 18

Harris v. Liberty Mutual,
   Insur., 171 P.3d 545 (2007) ......................................................................... 29

Lu v. Hawaiian Gardens 8 Casino, Inc.,
   50 Cal.4th 592 (2010) .................................................................................. 29

Ramirez v. Yosemite Water Co., Inc.,,
   20 Cal. 4th 7857 (1999) ............................................................................... 29


FEDERAL RULES

Rule 23 ................................................................................................ 28, 30

Rule 23(a)(1) ............................................................................................... 24

SPIRO LAW CORP.

Rule 23(a)(2) ........................................................................ 25, 26

Rule 23(a)(3) ........................................................................ 27

Rule 23(b)(3) ...................................................................26, 29, 31

Rule 23(b)(3)(A)-(C) ............................................................ 29, 30

Rule 23(b)(3)(D) .................................................................. 29

Rule 23(c)(3) ........................................................................ 32

Rule 23(c)(2)(B) .................................................................. 32

Rule 23(e) ............................................................................ 12


FEDERAL STATUTES

29 U.S.C. § 216(b) ...........................................................9, 30, 31

49 U.S.C. § 31502 ............................................................... 15


STATE STATUTES

Bus. & Prof. Code § 17200. ............................................... 25, 26

Civ. Proc. Code § 1021.5 ................................................... 22

Labor Code §201-203 ......................................................... 25, 26

Labor Code § 203 ............................................................... 27

Labor Code §§ 218.5, 218.6 ............................................... 23

Labor Code § 226 ............................................................... 26

Labor Code § 226.7 ............................................................ 25, 27

Labor Code § 558 ............................................................... 24

Labor Code §1194 .............................................................. 25


OTHER AUTHORITIES

Manual For Complex Litigation, Fourth, § 21.633 and § 21.634 ...................... 34

Newberg, §11.51 ................................................................. 12

U.S. DOL., Wage and Hour Division Fact Sheet # 19;

Dept. of Labor's Field Assistance Bulletin No. 2010-2 ("Bulletin")

dated November 4, 2010 .......................................................................... 16

SPIRO LAW CORP.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff hereby submits the following Plaintiff's **Revised** Motion For Preliminary Approval to supplement and supercede the moving papers entitled "Plaintiff's Motion For Preliminary Approval" previously filed on October 28, 2013. *See*, [D.E. 44]. Previously, the Parties had filed a Stipulation Regarding Extension Of Time To File Motion For Preliminary Approval ("Stipulation") [D.E. 43] requesting a further extension of the deadline to file their anticipated motion for preliminary approval from October 28, 2013 to November 11, 2013. Having not heard from the Court by the deadline, however, Plaintiff filed on October 28, 2013 his Motion For Preliminary Approval, including supporting declaration of Jennifer L. Connor [D.E. 44-2], but attached only an unsigned version of the proposed Settlement Agreement. [D.E. 44-3]. On October 30, 2013, the Court granted the Parties request and extended the deadline to file to Novmeber 11, 2013. ***Accordingly, Plaintiff's Revised Motion For Preliminary Approval, along with further supporting documents hereto, now refers to and includes a fully-executed version of the Stipulation And Settlement Of Class Action Claims ("Settlement Agreement"), including the [Proposed] Notice of Class Action, [Proposed] Claim Form, for which Plaintiff seeks preliminary approval.*** A true and correct copy of the fully-executed Settlement Agremeent is attached to the Amended Declaration Of Jennifer L. Connor ("Connor Amended Decl.") at Exhibit "1" thereto.[1]

## I.    INTRODUCTION

This is a putative wage and hour class action brought by former employee Plaintiff Sidney Elliott ("Plaintiff" or "Elliott") against Defendants

---

[1] This Revised Motion For Preliminary Approval is substantially similar to the prior version, however, there have been a few minor edits consistent with further revisions in the Settlement Agreement and also now includes citations to the Amended Declaration Of Jennifer L. Connor, as appropriate.

SPIRO LAW CORP.

Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. ("Defendants" or "Frito-Lay") alleging violation of California labor laws. Specifically, this lawsuit involves claims or allegations that Route Sales Associates ("RSAs"), Merchandisers, and Detailers of Frito-Lay were not properly paid all the wages owed for overtime hours worked, were not provided duty-free meal periods and rest breaks, performed work off-the-clock, were not provided accurate itemized wages statements, and were not paid all wages due upon cessation of employment. Frito-Lay denies all these allegations and asserts thirty-six affirmative defenses.

After over two years of prosecuting this litigation, Plaintiff has reached a proposed class action settlement with Defendant. Prior to reaching the settlement, the parties exchanged multiple sets of written requests for discovery, produced over nine thousand two hundred (9,200) pages of documents, personnel files, wage statements, time records, employment policies, exchanged spreadsheet data containing over one half million rows of sales data, fleet asset information, and route types, took four (4) depositions, mailed *Belaire-West* privacy opt-out notices to 1,790 putative class members, engaged in informal investigation and surveys, researched applicable law, and analyzed damages. Following a full-day mediation session before experienced mediator, Mark Rudy, Esq. on July 25, 2013, and numerous direct negotiations between counsel, Plaintiff and Defendant have exchanged and are finalizing a draft Stipulation And Settlement Of Class Action Claims ("Settlement Agreement"). As stated above, a true and correct copy of the fully-executed Settlement Agreement is attached at Exhibit "1" to the Connor Amended Decl. submitted concurrently herewith.

Subject to Court approval, the essential settlement terms are that Defendants shall make available for maximum payment a non-reversionary

SPIRO LAW CORP.

*One Million Six Hundred Thousand Dollars ($1,600,000)* into a Settlement Fund that will be created for the benefit of the Class Members.  The proposed Settlement Class is comprised of current and former hourly employees of Defendants who were employed in California in with the job positions/titles of: "Detailers"; "Merchandisers," along with the related job positions/titles of "Sales Merchandisers"; and "Route Sales Associates," along with the related job positions/titles of "RSR Associate," "RSR Sales Specialists," "RSR Specialist," "Sales Trainee," and "RSR Trainee," - at any time between November 9, 2007 and the latest of: (i) the date ending sixty (60) days after execution of the MOU, (ii) December 31, 2013, or (iii) the date the Court grants Preliminary Approval.  Based on estimates provided to Plaintiff prior to mediation, the Parties understood the average headcounts since November 9, 2007 to July 17, 2013 to be as follows: Detailers: 360; Merchandisers: 151; and RSAs: 174.5.  For estimate and discussion purposes only, those average head counts combined over a six-year period calculated to November 2013 yield approximately 4,113 Class Members.[2]

The Settlement Fund will be used to pay administration of the settlement, a payment to California's Workforce Development Agency, any enhancement awards approved by the Court to the class representative, any individual payment to the class representative in consideration for her global release of all claims, and all costs and fees awarded and approved by the Court to Plaintiff's counsel.  *This is a non-reversionary Settlement that will be distributed to Participating Class Members until disbursed*.  For the reasons set forth herein, Plaintiff respectfully submits that the Court should preliminarily approve the parties' Settlement Agreement, approve the proposed method and form of Notice, and schedule a Fairness Hearing to consider final

---

[2] 360+151+174.5 = 685.5 x 6 years = 4,113.

SPIRO LAW CORP.

1    approval of the proposed Settlement.

2    **II.    NATURE OF THE LITIGATION**

3           **A.    Plaintiff's Legal Claims**

4           The initial Complaint was filed in this Court on November 09, 2012.

5    Legally, this litigation arises from certain business practices of Frito-Lay that

6    Plaintiff alleges violate California wage and hour laws with respect to RSA

7    employees, on the one hand, and Detailer/Merchandiser employees, on the other

8    hand.  Connor Amended Decl. ¶ 4.  On behalf of RSAs, Plaintiff alleges that

9    Frito-Lay calculates overtime pay owed to employees using an illegal fluctuating

10   workweek rather than California's mandated forty hours workweek. Connor

11   Amended Decl. ¶ 4.  The effect of utilizing the fluctuating workweek is that the

12   more hours Plaintiff and RSAs work in excess of forty hours, the lower their

13   overtime rates of pay.  The legitimacy of Defendants' use of the fluctuating

14   workweek depends on whether RSAs are exempt pursuant to the Motor Carrier

15   Act exemption in Wage Order 9-2001 – which is the crux of the parties' dispute

16   and presents novel factual and legal issues in this case.

17          On behalf of Merchandisers and Detailers, Plaintiff alleges that Frito-Lay

18   fails to provide duty-free meal and rest breaks.  Connor Amended Decl. ¶ 4.

19   While Defendant's formal policy requires the taking of meal and rest breaks, its

20   common scheduling policy deprived Merchandisers and Detailers in practice of

21   the ability to take timely breaks free from work obligations.  Connor Amended

22   Decl. ¶ 4.

23          Lastly, Plaintiff alleges that Frito-Lay is liable for derivative claims for

24   failing to provide accurate wage statements, failing to pay all monies owed to

25   employees who have separated employment within the statutory period, along

26   with violation of California's unfair competition law.  Connor Amended Decl. ¶

27   4.

28

SPIRO LAW CORP.

**B.   Plaintiff's Factual Claims**

Factually, Plaintiff Sidney Elliott is a former hourly employee who held the job titles of "Detailer" and "RSA" while working for Defendant Rolling Frito-Lay from August 24, 2008 through February 2013 in Southern California.[3] It is important to note that although Plaintiff's job title was officially that of "Detailer," Plaintiff asserts that his workload actually equated him with the role of a "Merchandiser."  Plaintiff contends that the "Detailer" and "Merchandiser" job duties are equivalent except that a Detailer works part-time (5-25 hours per week), while a Merchandiser works full-time (40-45 hours per week). Regardless, the Detailer and Merchandiser are ***both*** non-exempt hourly paid employee positions that entail performance of the following duties: restock products in customer locations and pull product from storage areas in back of store; ensure products are properly displayed and rotated; clean and straighten shelves; check coding dates, rotating product and removing unsaleables; and assemble and teardown promotional and other displays.

Although Frito-Lay's policy is that Merchandisers/Detailers are supposed to take meal and rest breaks, Plaintiff contends its scheduling does not permit a reasonable opportunity in practice.  Merchandisers are assigned routes that are designed with a schedule of stores, but do not include any pre-designated time that they are required take meal and rest breaks.   While Plaintiff generally recorded on his timesheets that he took a break, he testified that the majority of the time he was unable to take a duty-free meal period in practice.  Plaintiff contends that if he or other Merchandisers/Detailers did happen to eat a meal it was often while driving to the next location.  Likewise,

---

[3] Mr. Elliott's employment in the job title of "Detailer" spanned from August 2008 through February 2009 where he worked primarily out of the La Mirada facility.  Thereafter, Plaintiff worked in the job title of "Route Sales Associate" spanning from April 2009 through February 2013 where he worked primarily out of the El Toro facility.

SPIRO LAW CORP.

SPIRO LAW CORP.

1  Plaintiff stated that he and other Merchandisers/Detailers did not take duty-free
2  rest breaks because of the pressure to get their work done.

3      With respect to RSAs, their job duties are to temporarily cover a route
4  and for RSRs and Merchandisers who are sick, absent, on vacation, and/or on
5  leave and fulfill those job functions respectively.  The RSA position is full-
6  time with a five day work week that averages in excess of 50 hours per week
7  and may be in excess of 60 hours per week.  RSAs are not generally assigned
8  their own routes, but rather drive or service whatever route is assigned to the
9  RSR and/or Merchandiser they are covering.  Thus, RSAs are exposed to
10 multiple routes and drive different assigned trucks along those routes.  RSAs
11 receive a weekly salary, including variable rate overtime (described below)
12 and benefits, but generally do not earn commissions.

13     It is undisputed that Frito-Lay compensates RSAs by utilizing a common
14 variable rate overtime ("VROT") policy to pay overtime to RSAs.   An
15 explanation of VROT is the following:  Example:  Route Sales Associate
16 worked a 60 hour week and will be paid $780.00 salary plus one-half time for
17 the 20 hours worked over 40.

| Base Salary for 40 hours | $780.00 |
| 20 hours of Variable Rate Overtime | $130.00 |
| Total Compensation for the Week | $910.00 |

To get to the $130.00 in VROT, the base salary of $780 is divided by the
fluctuating 60 hours worked (as opposed to California's 40 hours per week)
and multiplied by half-time rate (as opposed to California 1.5 rate) to yield
$6.50 as the VROT rate.  The VROT rate is then multiplied by the number of
overtime hours worked, *e.g.* 20, resulting in the $130 payment for overtime.
Problematic, however, is that use of the fluctuating workweek method to

6

calculate overtime pay violates California law unless an exemption applies – and Plaintiff contends that no such valid exemption exists.

### C.   Defendants' Denial Of Liability

Defendants deny any wrongdoing or legal liability with regard to any and all of the claims raised in this litigation and assert a variety of affirmative defenses. <u>Connor Amended Decl</u>. ¶ 5. Defendants deny that putative Class Members suffered damages; that Defendants improperly calculated and paid putative Class Members for all wages owed, including overtime; that Defendants failed to provide meal and rest periods; that Defendants provided putative Class Members with inaccurate wage statements; that Defendants failed to timely pay all wages due at termination; that Defendants engaged in any unlawful, unfair, or fraudulent business practices; that Defendants engaged in any other wrongful conduct alleged. <u>Connor Amended Decl</u>. ¶ 5. Specifically, Defendants claimed that Plaintiff and other RSAs are exempt by reason of, including but not limited to, the Motor Carrier Act, and not entitled to overtime. Defendants further argue that they should not be liable to Plaintiff and other Merchandisers/Detailers for unreported work, that such work was voluntarily performed contrary to Defendants' policies, and that the meal and rest break claims cannot be certified post-*Brinker*. Finally, Defendants argue that Plaintiff will be unable to prevail in an individual capacity, much less certify any of his claims on a class-wide basis. <u>Connor Amended Decl</u>. ¶ 5.

Defendants nevertheless have expressed a desire to settle the class action and claims asserted on the terms and conditions set forth in the Settlement Agreement for the purpose of avoiding the burdens, expenses, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies advanced by the litigation. Should this litigation not resolve, there are

significant factual and legal issues in dispute that the Parties will vigorously contest in future legal proceedings.  Connor Amended Decl. ¶¶ 11 and 13.

## III.   SUMAMRY OF SETTLEMENT TERMS

Plaintiff and Defendants have agreed to a settlement of this lawsuit on a class-wide basis.  In short, the Settlement provides that Defendants will make available a maximum sum in the amount of $1,600,000.00 payable into a Settlement Fund that will be created for putative Class Members and to resolve any and all issues related to this litigation.  This Settlement Fund is ***non-reversionary***.  Connor Amended Decl. ¶ 14(A).

### A.   Conditional Certification Of Settlement Class

Plaintiff and Defendants have agreed to seek preliminary approval of the Settlement Agreement, which include preliminary approval of certification of the Class(es) for settlement purposes only.  The Class Period applicable to each of the proposed Class(es) runs from between November 9, 2007 and the latest of: (i) the date ending sixty (60) days after execution of this MOU; (ii) December 31, 2013; or (iii) the date the Court grants Preliminary Approval ("Class Period").  Connor Amended Decl. ¶ 14(C).  Accordingly, Plaintiff hereby moves for certification of the following Class(es), which collectively will be known as "Class Members" for the individuals who meet the following criteria:

> **Route Sales Associate Class:**  All present and former hourly employees of Defendants Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. ("Frito-Lay") who are or were employed in California in the job position of Route Sales Associate, RSR Associate, RSR Sales Specialist, RSR Specialist, Sales Trainee and/or RSR Trainee at any time during the Class Period.

> **Merchandiser Class:**  All present and former hourly employees of Defendants Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. ("Frito-Lay") who are or were employed in

SPIRO LAW CORP.

California in the job position of Merchandiser or Sales Merchandiser at any time during the Class Period.

**Detailer Class:** All present and former hourly employees of Defendants Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. ("Frito-Lay") who are or were employed in California in the job position of Detailer at any time during the Class Period. Connor Amended Decl. ¶ 14(C).

Each Class Member who has not timely and validly opted out of this Settlement will be deemed a "Class Member." Additionally, "Settlement Class Member" means each every Class Member who timely submits a valid Claim Form/FLSA Consent Form. Connor Amended Decl. ¶ 14(C). For settlement purposes only, the parties agree that all Settlement Class Members are similarly situated, and Plaintiff hereby moves for collective certification of Settlement Class Members within the meaning of the FLSA, 29 U.S.C. § 216(b).

### B.    Award To Class Members

The essential settlement terms are that Defendants shall make available a maximum total of One Million Six Hundred Thousand Dollars ($1,600,000.00) ("Gross Settlement Amount") to settle all claims of Plaintiff, Class Members, and Class Counsel. Connor Amended Decl. ¶ 14(A). The Settlement Fund shall be allocated as follows:

(1)    Subject to Court approval, attorneys' fees to Class Counsel up to $480,000 (or 30% of the Settlement Fund)

(2)    Subject to Court approval, actual costs to Class Counsel up to $25,000;

(3)    Subject to Court approval, the Claims Administrator will be paid out of the Settlement Fund administration expenses (estimated at approx. $30,000 to $45,000);

(4)    Subject to Court approval, class representatives and enhancement

SPIRO LAW CORP.

1    award up to $15,000; and

2    (5)    Payment of $5,000 to the Labor & Workforce Development

3    Agency pursuant to PAGA (of which 75%, or $3,750 will be paid

4    to the LWDA and 25% of which will be paid to the Settlement

5    Class Members) the Labor Code Private Attorneys General Act.

6    Connor Amended Decl. ¶ 14(A).

7    After deducting the amounts 1-5 above, the remaining net settlement funds will

8    be available for distribution ("Payout Fund.")  Based on the estimated amounts

9    itemized above, approximately $1,031,250 will be available for distribution to

10   Settlement Class Members.  Connor Amended Decl. ¶ 13(B).    The Settlement

11   requires Settlement Class Members to send claims to the Administrator in

12   order to be paid.  Each Settlement Class Member's Claim Amount shall be

13   determined by a point system, whereby each Settlement Class Member is

14   awarded a value for each workweek of active employment worked during the

15   Class Period, with different positions covered by this settlement awarded

16   different point values based on the strength of the claims raised.   Connor

17   Amended Decl. ¶ 14(B).    Each Class Member's individual Weighted Work

18   Week Value will then be divided by the total number of Work Weeks for all

19   Class Members, and the resulting fraction then multiplied by the Payout Fund

20   amount.  Although putative Class Members must submit a Claim Form in order

21   to receive payment, ***the entire Payout Fund will be paid out to Settlement***

22   ***Class Members.***  Connor Amended Decl. ¶ 14(B).

23       **C.    Notice To Class Members**

24       The parties to this Settlement Agreement contemplate that, prior to final

25   approval, appropriate notice of: 1) the Settlement; 2) any Fairness Hearing at

26   which the Court will consider the approval of this Settlement; and 3) the rights

27   of Class Members to elect to submit a Claim Form to receive payment from the

28

SPIRO LAW CORP.

Settlement Fund, exclude themselves from the Class, or object – will be given to Class Members.  The parties contemplate that Notices and Claim Forms will be disseminated in accordance with the proposed Notice plan described herein and the Claims Administrator shall process both the claims and the opt-outs received.  Settlement payments Class Members who submit a Claim Form will be allocated based on individual Work Weeks weighted at the appropriate Distribution Factors out of Class Members during the Class Period multiplied by the Payout Fund.  Connor Amended Decl. ¶ 14(B) and ¶ 29.  There will be a "provisional settlement amount" calculated for each Class Member based on the previously described formula that will be listed on the Claim Form for each putative Class Member at the time of Notice distribution.  Connor Amended Decl. ¶ 29.  The Final Settlement Amount to Settlement Class Members, however, will be based on any further distribution required to distribute the full Payout Fund amount per the Settlement Agreement.  Connor Amended Decl. ¶ 14(B) and (D).

## IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.  Standards For Preliminary Approval

At the preliminary approval stage, a court need only "determine whether the proposed settlement is *within the range of possible approval*."  Murillo v. Pac. Gas & Elec. Co., 226 F.R.D. 468, 479 (E.D. Cal. 2010) [emphasis added]. This is a minimal standard.  Courts do not substitute their judgment for that of the parties, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  Hammon v. Barry, 752 F. Supp. 1087 (D.D.C. 1990); In re Armored Car Anti-Trust Litigation, 472 F.Supp. 1357 (N.D. Ga 1979); Sommers v. Abraham Lincoln Federal Savings & Loan Association, 79 F.R.D. 571 (E.D. Pa. 1978).

1    Courts must give "proper deference to the private consensual decision of
2    the parties," since "the court's intrusion upon what is otherwise a private
3    consensual agreement negotiated between the parties to a lawsuit must be
4    limited to the extent necessary to reach a reasoned judgment that the
5    agreement is not the product of fraud or overreaching by, or collusion between,
6    the negotiating parties, and that the settlement, taken as a whole, is fair,
7    reasonable, and adequate to all concerned."  Hanlon v. Chrysler Corp., 150
8    F.3d 1011, 1027 (9th Cir. 1998).  Indeed, as a "[s]ettlement is the offspring of
9    compromise," the question upon preliminary approval "is not whether the final
10   product could be prettier, smarter or snazzier, but whether it is fair, adequate
11   and free from collusion."

12    As the Ninth Circuit explained, the district court's role in evaluating a
13   class action settlement is therefore tailored to meet that narrow objective.
14   Officers for Justice v. Civil Service Commission of City and County of San
15   Francisco, 688 F.2d 615, 625 (9th Cir. 1982).  Review under Rule 23(e) "must
16   be limited to the extent necessary to reach a reasoned judgment that the
17   agreement is not the product of fraud or overreaching by, or collusion between,
18   the negotiating parties."  Id.  Accordingly, the Ninth Circuit will not reverse a
19   district court's approval of a class action settlement "unless the fees and relief
20   provisions clearly suggest the possibility that class interests gave way to self-
21   interest."  See, Staton v. Boeing Co., 327 F.3d 938, 961 (9th Cir. 2003).  There
22   is a presumption that negotiations were conducted in good faith.  Newberg,
23   §11.51; Pridd v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989).  There is a strong
24   policy in the Ninth Circuit favoring settlement of class actions.  Class
25   Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for
26   Justice, supra, 688 F.2d at 625.

27
28

SPIRO LAW CORP.

**B.     The Proposed Settlement Satisfies The Requirements For Preliminary Approval**

The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See*, <u>Staton</u>, <u>supra</u>, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." <u>Officers for Justice</u>, <u>supra</u>, 688 F.2d at 625 (9th Cir. 1982).  Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "an amalgam of delicate balancing, gross approximations and rough justice."   <u>Id</u>.   The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." <u>Staton</u>, <u>supra</u>, 327 F.3d at 961.

**1.     The Settlement Negotiations Occurred At Arm's Length**

The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *See,* <u>Linney v. Cellular Alaska Partnership</u>, 1997 WL 450064, *5 (N.D. Cal. 1997). *See also*, <u>In re Immune Response Securities Litigation</u>, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Settlement Agreement was reached after vigorous arms-length negotiations by experienced counsel on both sides and with the aid of, Mark S. Rudy, an experienced and well-regarded mediator of complex wage and hour class actions. <u>Connor Amended Decl</u>. ¶¶ 12-13.  The Parties agreed to mediate after completing a significant amount of discovery, and in any event, approval of a class action settlement does not require that discovery be exhaustive.  <u>See,</u>

SPIRO LAW CORP.

SPIRO LAW CORP.

e.g., In re Immune Response Securities Litigation, supra, 497 F.Supp.2d at 1174 (S.D. Cal. 2007).  Prior to reaching the Settlement, the parties exchanged multiple sets of written requests for discovery, produced approximately nine thousand two hundred (9,200) pages of documents, personnel files, wage statements, time records, and employment policies, and took four (4) depositions.  Connor Amended Decl. ¶¶ 6-9.  These formal discovery exchanges are in addition to informal discovery exchanges that preceded the parties' mediation efforts.  Connor Amended Decl. ¶ 10.  The Settlement was negotiated with the assistance of Mr. Rudy and is anticipated to culminate in a Settlement Agreement generally consistent with the terms described herein. Connor Amended Decl. ¶ 12.   At all times, the settlement negotiations have been adversarial, non-collusive, and at arm's-length.  Connor Amended Decl. ¶ 13.

### 2. The Settlement Is Within The Range Of Possible Approval

To grant preliminary approval of this Settlement, the Court need find only that the Settlement falls within the range of possible final approval, also described as "the range of reasonableness."  *See, e.g.,* In re Traffic Executive Ass'n – Eastern Railroads, 627 F.2d 631, 633-634 (2d Cir. 1980).

### a) The Amount Of Recovery Is Reasonable And Adequate

While Plaintiff counsel believes this action has substantial merit, the uncertain outcome of litigation must be acknowledged.  Such is especially true in light of the novel legal issues presented by the California Motor Carrier Act ("MCA") exemption and the uniquely difficult meal and rest period claims being advanced post-*Brinker*.

### (i) The Unchartered Legal Territory Of California's MCA Exemption

Absent this Settlement, Plaintiff would face challenging hurdles because

this case addresses ***novel issues regarding California's MCA exemption***. <u>Connor Amended Decl</u>. ¶ 16.   Under California's applicable <u>Wage Order</u> 9-2001, Section 3, it states, in pertinent part that:

> (L) "The provisions of this section [California overtime] are not applicable to employee whose hours of service are regulated by:
>
> (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers, or;
>
> (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers.

While California's MCA explicitly refers to its federal counterpart and can provide guidance, federal law does not pre-empt California wage and hour law. *Wamboldt v. Safety-Kleen Systems, Inc.*, 2008 WL 728884, *8.

The MCA exemption applies to employees who participate in activities "affecting highway safety including transportation of goods in interstate commerce." 49 U.S.C. § 31502.   While it is agreed that RSAs do not drive across state lines in the course of their duties, it is disputed whether or not the Frito-Lay goods that RSAs deliver travel in interstate commerce.   <u>Connor Amended Decl</u>. ¶ 16.   Defendants raise and cite to a district court of Texas case, *Billings v. Rolling Frito-Lay Sales, L.P.* (S.D. Tex. 2005) 413 F. Supp. 2d 817, that held that Frito-Lay's product ordering system met all the requirements of interstate commerce.   Defendants argue that because the product ordering system is substantially the same in California the criteria for interstate commerce is met.   Plaintiff distinguishes *Billings* by virtue of the fact that it measured delivery of products by RSRs – not RSAs.[4]   <u>Connor</u>

---

[4]   Plaintiff contends that this distinction is problematic in light of recent decisional authority requiring evidence of the proportion of interstate commerce actually delivered by the class members themselves, *see, Veliz v. Cintas Corp.*, (N.D. Cal. 2009) 2009 WL 1107702, and which is not explicitly

SPIRO LAW CORP.

SPIRO LAW CORP.

1   Amended Decl. ¶ 16.  While *Billings* may not be determinative, nonetheless, it

2   may be sufficiently persuasive to undermine Plaintiff's arguments.

3       Further highly-contested and unchartered areas include the legal and

4   factual quandary surrounding vehicle weight requirements and Frito-Lay's use

5   of a hybrid fleet of truck sizes.  Connor Amended Decl. ¶ 17.  Frito-Lay

6   operates one of the largest distribution vehicle fleets in the United States and

7   utilizes trucks ranging in size from under 10,000 lbs. to over 26,000 lbs. in

8   gross vehicle weight (referred to as a "hybrid fleet").  Moreover, RSAs who

9   are not assigned routes, but rather provide coverage for absent RSRs are

10  exposed to the panoply of vehicles – some of which meet weight threshold

11  requirements and some of which do not.  Connor Amended Decl. ¶ 17.

12  Plaintiff points out that, under the federal MCA and in the hybrid-fleet context,

13  employees are "non-exempt in those workweeks where work is also performed

14  on a vehicle that weighs 10,000 pounds or less (small vehicle); otherwise a

15  presumptive 4-month exemption rule applies." *See*, U.S. DOL., Wage and

16  Hour Division Fact Sheet # 19; Dept. of Labor's Field Assistance Bulletin No.

17  2010-2 ("Bulletin") dated November 4, 2010.  Thus, Plaintiff contends RSAs

18  are entitled to overtime compensation provided that they worked for, at least

19  part of the week, on vehicles weighing less than 10,000 pounds.  *See, e.g.*

20  *Hernandez v. Alpine Logistics, LLC*, (W.D.N.Y. 2011) 2011 WL 3800031;

21  *Garza v. Smith Intern. Inc.*, (S.D. Tex. 2011) 2011 WL 835820, *3.

22      There are, however, two difficulties faced by Plaintiff with his analysis:

23  1) It is an issue of first impression as to whether California adopts the

24  exception (or something comparable) to the federal MCA exception to the

25  exemption that accounts for a hybrid-fleet; and 2) The need to examine the

26  _____

27  tracked for RSAs.

28

truck weights by workweek arguably threatens commonality for class certification. <u>Connor Amended Decl</u>. ¶¶ 18-19. Defendant responds that California likely does not incorporate the federal weight requirement (including the hybrid fleet analysis) based on the case of *Cerutti v. Frito-Lay, Inc.*, (W.D. Pa. 2011) 777 F.Supp.2d 920. In *Cerutti*, a Pennsylvania court refused to read the federal Motor Carrier Act exemption into the Pennsylvania state Motor Carrier Exemption. *Id*. at 941-942 (stating "To the extent the Pennsylvania legislature intends the PMCE to follow the FMCE, the Pennsylvania legislature must change Pennsylvania law to include the provisions of § 306(a) of the TCA. This court cannot do so."). This legal issue has never been decided – one way or the other – by any California court. <u>Connor Amended Decl</u>. ¶ 18. Additionally, Defendants point out that if a weight requirement exists it begs the question of, for any given week, whether an RSA is driving a large or small truck? Defendants thus contend that whether and when the California Motor Carrier Exemption applied to each individual RSA would devolve into hundreds of mini-trials rendering the matter unsuitable for class treatment. <u>Connor Amended Decl</u>. ¶ 19. Plaintiff counters that truck information is available through Frito-Lay records such that an appropriate methodology can be relied for class treatment. <u>Connor Amended Decl</u>. ¶ 19. Based on the foregoing, the legal uncertainty of California's MCA exemption must be acknowledged and that the RSA employees' claims are apt to be subject to legal challenges in an unsettled area that may result in appellate review.

**(ii)     Meal And Rest Break Claims Must Be Evaluated Against The *Post*-Brinker Authority And Time Records Showing Breaks.**

With respect to meal and rest break claims, Plaintiff would face the legal hurdle of the post-*Brinker* progeny of cases and, the factual hurdle that

Plaintiff and other employees recorded breaks despite having not taken them. <u>Connor Amended Decl</u>. ¶ 20.  Plaintiff filed this lawsuit prior to the issuance of the California Supreme Court's ruling in *Brinker v. Superior Court* (2012) 53 Cal.4th 1004 ("*Brinker*") setting forth the "provide" standard.  Here, Plaintiff does not contest the legality of Frito-Lay's written policies, but rather asserts that Defendants' scheduling practices and workload demands fail to permit employees a reasonable opportunity to take uninterrupted breaks. Plaintiff's experience was that he had so many customer stores and strict time constraints in which to service those stores that it was "near impossible" to take a meal period.  If Plaintiff took one, it would be, for example, while driving to the next store location.  <u>Connor Amended Decl</u>. ¶ 20.

Problematic, however, is that Plaintiff and other putative class members recorded on their time sheets that they took meal breaks even when, in fact, they worked through them.  This creates an evidentiary obstacle for Plaintiff for purposes of certification and liability because time records tend to demonstrate how frequently breaks are "short," "late," or "missed" – with the parties usually proposing their respective explanations of why.  Here, however, Plaintiff proposes that time records are not reliable indicators because he and other class members recorded having taken meal breaks which were never provided.  Thus, in addition to raising meal and rest break claims post-*Brinker*, there is an additional evidentiary hurdle much akin to those faced in off-the-clock work cases.

Although Plaintiff is confident of his ability to garner favorable evidence in support of his wage and hour claims, there are inherent risks with litigation. It is also worth noting that, assuming *arguendo* that Plaintiff prevailed and certified a Fed. R. 23(b)(3) class action, there is no guarantee that Defendants would not later move for and obtain decertification.  <u>Connor Amended Decl</u>. ¶

SPIRO LAW CORP.

1   27.    If the Court either denied class certification or later decertified it, the

2   Class would recover nothing.  A trial and any appeals that might be taken

3   would be protracted and expensive – assuredly both parties could expect to

4   incur hundreds of thousands of dollars in costs and fees on depositions,

5   experts, class-wide notice, pre-trial briefing and subsequent appeals.  The

6   substantial benefits obtained by this Settlement far outweigh the expense and

7   delay which would inevitably result from continued litigation of this action

8   and eliminate the risk that the Class might otherwise recover nothing.

9       The Settlement provides substantial benefits to all Class Members by

10  making a $1,600,000 Settlement Fund available to Class Members with a

11  payout of the entire Payout Fund.  <u>Connor Amended Decl</u>. ¶ 22.  Assuming

12  that a Payout Fund of $1,031,250[5] is available (after deductions of attorneys'

13  fees and costs, class representative award, payment to the LWDA, and costs

14  for administration) distribution to approximately 4,113 Class Members**,**

15  ***assuming a maximum 100% Claims Rate and pro rata*** by individual Class

16  Member would ***result in $250 for each Settlement Class Member.*** <u>Connor</u>

17  <u>Amended Decl</u>. ¶ 14(D) and ¶ 22.  This individual *pro rata* calculation is

18  provided for estimation purposes only.  In actuality, Settlement Class

19  Member's Claim Amount will be determined by a point system, whereby each

20  Settlement Class Member is awarded a value for each workweek of active

21  employment worked during the Class Period, with different positions covered

22  by this Settlement awarded different point valued based on the strength of the

23  claims raised.  Specifically, each week worked in a Qualified RSA Position

24  will receive a Distribution Factor of five; a Qualified Merchandiser Position

25  will receive a Distribution Factor of two; and a Qualified Detailer Position will

26  receive a Distribution Factor of one.  <u>Connor Amended Decl</u>. ¶ 23.

27  _____

28  [5] $1,600,000 (-$480,000; -$25,000, -$15,000, -$45,000 (max. est.), -$3,750 = $1,030,000.

Workweeks will be based on status as of the Covered Period.  Each Settlement Class Member's individual Weighted Work Week Value will then be divided by the total number of Work Weeks for all putative Class Members, and the resulting fraction then multiplied by the Net Settlement Amount.  <u>Connor Amended Decl</u>. ¶ 23.

For example, a Merchandiser who worked 365 days would be eligible for 52 weeks, multiplied by a Distribution Factor of 2, or 104 Weighted Workweeks.  If the Payout Fund was $1,000,000.00 and the Total Weighted Workweeks for all putative Class Members was 500,000 workweeks, this would result in a $2.00 provisional per workweek amount.  That Merchandiser would be eligible for $2.00 for 104 weighted workweeks, or $208.00.  This would be that individual putative Class Member's Provisional Settlement Amount.  <u>Connor Amended Decl</u>. ¶ 24.

To the extent any of the Provisional Settlement Amounts are unclaimed because a putative Class Members: (1) could not be located after various agreed upon NCOA/re-mailing/etc. efforts; (2) submitted a valid and timely request for exclusion; and/or (3) failed to submit a valid and timely Claim Form – such amounts are "Remaining Funds" in the Payout Fund.  <u>Connor Amended Decl</u>. ¶ 25.   The Remaining Funds shall be distributed to Settlement Class Member who made valid claims on a proportional basis essentially by taking the Remaining Funds and dividing it by the total of all Settlement Class Members Weighted Work Week figures to arrive at an Additional Award amount.  Each Settlement Class Member will then receive an Additional Award equal to the value of their Weighted Work Week, multiplied by the Additional Work Week Amount.  The Provisional Settlement Amount plus and Additional Award Amount will constitute the Final Settlement Amount to be paid to participating Settlement Class Members.  <u>Connor Amended Decl</u>. ¶ 25.

SPIRO LAW CORP.

Plaintiff's estimate of the Settlement recovery as as percentage of possible damages recoverable at trial is discussed at <u>Connor Amended Decl</u>. ¶ 26.

### b)     The Class Representative Payment Is Reasonable.

Subject to Court approval, Plaintiff seeks, and Defendants agree not to oppose, an incentive award fee request not to exceed $15,000 to Plaintiff Sidney Elliott for his services in this litigation.  <u>Connor Amended Decl</u>. ¶ 28; <u>Declaration Of Sidney Elliott</u> ("Elliott Decl.") filed concurrently herewith. Named plaintiffs in class action litigation are eligible for reasonable incentive payments, and Plaintiff asserts that the amount requested here is reasonable. Incentive awards are regularly sought to compensate representative plaintiffs for, among other things, the risks in bringing the suit and for the time and effort they spent. *See*, <u>Van Vranken v. Atlantic Richfield Co.</u> (N.D. Cal. 1995) 901 F.Supp. 294, 299 (approving incentive award for plaintiff who, among other things appeared for deposition and regularly communicated with counsel.)  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  <u>Ingram v. The Coca-Cola Co.</u>, 200 F.R.D. 685, 694 (N.D. Ga. 2001).

As Judge Patel, formerly Chief Judge of the Northern District of California, stated in upholding an incentive award of $10,000 in a wage and hour class action settlement with a common fund of $900,000:

> $10,000.00 incentive award to plaintiff Navarro is reasonable.  In this district, a $5,000 payment is presumptively reasonable.  *See*, <u>Hopson v. Hanesbrands Inc.</u>, No. CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. April 3, 2009) (LaPorte, Mag. J.)  An employee who lends his name to a lawsuit against a current or former employer is placed in a financially vulnerable position.  Plaintiffs who take on this risk for the genuine enforcement of wage and hour provisions should be encouraged.  Further, when individual plaintiffs faithfully execute their duties as a class representative, they should be rewarded.  <u>Navarro v. Servisair</u>, 2010 WL

SPIRO LAW CORP.

1729538, *4 (N.D. Cal. 2010).

*See also*, Bell v. Farmers Ins. Exch., 115 Cal.App.4[th] 715, 726 (2004) (upholding "service payments" to named plaintiffs); In re: SmithKline Beckman Corp. Sec. Litig., 751 F.Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 awards for one named representative of each of nine plaintiff classes involving more than 22,000 claimants in a settlement of $22 million).

Here, Plaintiff is aware of, assumed, and fulfilled his duties as class representative by, among other things, remaining informed of the status of his case, sitting for deposition, and otherwise actively prosecuting the litigation. Elliott Decl. ¶¶ 6-8; Connor Amended Decl. ¶ 5. Specifically, named Plaintiff participated by, among other things: reviewing documents and pleadings, providing documents and responses to written discovery, regularly communicating with attorneys about the status of the litigation, preparing for deposition, sitting for his deposition on October 4, 2012, making himself available and appearing during the full day of settlement negotiations on July 25, 2013, and discussing the proposed and actual settlement with counsel. Elliott Decl. ¶ 8 (estimating that he spent approximately 100 hours of his time devoted to working on this case). Moreover, the incentive award request is such a tiny fraction of the approximate settlement value ($15,000 is less than one percent (1%) of $1.6 Million), that it is well within the range of enhancement fees awarded by courts. Staton, supra, 327 F.3d at 975-977. Even accounting for the agreed upon and estimated deductions, the Payout Fund available for approximately $4,113 Class Members (assuming full participation) would still yield an estimated $250.00 per Class Member if distributed *pro rata*.[6] Compared to the Settlement Fund amount of $1,600,000

---

[6] As previously explained, under the Settlement Agreement the payments are **not** determined *pro rata* by dividing the Payout Fund by the number of putative Class Members. Instead, the formula depends on a point system and weighted workweeks of Settlement Class Members relative to the number of

SPIRO LAW CORP.

the requested amount of $15,000, will not appreciably diminish the amount available for distribution to the Class.  Accordingly, Plaintiff asserts that his requested incentive award merits preliminary approval.

### c)   The Agreed Upon Fees And Costs Are Reasonable

Subject to Court approval, Plaintiff's counsel, Spiro Law Corp. and Gigliotti & Gigliotti LLP, apply for attorneys' fees of 30% of the gross Settlement Fund, or no more than $480,000, and actual costs in an amount not to exceed $25,000.  Connor Amended Decl. ¶ 14(A).  Class counsel are entitled to a reasonable award of attorneys' fees and costs.  See, Labor Code §§ 218.5, 218.6, 226.7, and 1194; Civ. Proc. Code § 1021.5.  A plaintiff prevails for purpose of a fee award, if plaintiff "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit."  Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).  A plaintiff is a prevailing party where a successful settlement is obtained.  Yeagley v. Wells Fargo Co., 2010 WL 601460, *1 (9th Cir. 2010).  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund.  See, Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); Torris v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993); Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  See also, Gardner v. GC Services, LP., 2012 WL 1119534, *7 (S.D. Cal. 2012) (approving 30%); Vasquez v. Coast Valley Roofing, Inc., 226 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered

---

compensable workweeks for the all the putative Class Members combined, plus any redistribution amounts necessary to fully distribute the Payout Fund.

SPIRO LAW CORP.

1   the benchmark); <u>Morris v. Lifescan, Inc.</u> 54 Fed. Appx. 663 (9th Cir. 2003)

2   (affirming a 33% award).

3       Currently, the Spiro Law Corp. firm, collectively, has invested well-over

4   360 hours in this case.   <u>Connor Amended Decl</u>. ¶ 37.   Further, details

5   pertinent to calculating Plaintiff's attorneys' fees and costs is set forth in

6   <u>Connor Amended Decl</u>. ¶¶ 30-38.   Plaintiff also will provide the Court with

7   detailed information needed to calculate attorney's fees under the lodestar

8   method in a separate Motion For Attorneys' Fees And Costs that will be filed

9   with the Court and submitted for posting on the Claims Administrator website

10  prior to the close of any objection or opt-out deadline.   <u>Connor Amended Decl</u>.

11  ¶ 37.   This procedure satisfies the standards of <u>In re Mercury Interactive</u>

12  <u>Securities Litigation</u>, 618 F.3d 988 (9th Cir. 2010), and will allow putative

13  Class Members a sufficient opportunity to review attorneys' fees and costs in

14  advance of any relevant Settlement deadlines.

15  **V.    PLAINTIFF'S CLAIMS MERIT CONDITIONAL CERTIFICATION**

16      **A.    Numerosity**

17      Under Rule 23(a)(1), a class action may be maintained where "the class

18  is so numerous that joinder of all members is impracticable."   In determining

19  whether joinder would be impracticable, a court may consider not only the

20  sheer number of class members, but also "the nature of the action, the size of

21  the individual claims, [and] the inconvenience of trying individual suits."

22  <u>Wang v. Chinese Daily News</u>, 231 F.R.D. 602, 606 (C.D. Cal. 2005).

23      In this action, and based on the data that was made available to Plaintiff

24  and used at mediation, the combined total population of all putative RSA,

25  Merchandiser, and Detailer Class Members is in excess of 4,000 current and

26  former employees.   <u>Connor Amended Decl</u>. ¶ 14(C) and (D).   The actual

27  Qualified Positions job positions/titles include: Route Sales Associate, along

28

SPIRO LAW CORP.

with the related job positions/titles of RSR Associate, RSR Sales Specialist, RSR Specialist, Sales Trainee, RSR Trainee; Merchandiser, along with the related job position/title of Sales Merchandiser; or Detailer for Defendants in the State of Califoria during the Class Period.   <u>Connor Amended Decl</u>. ¶ 14(C).  Moreover, each of the 3 Classes – RSAs, Merchandisers, and Detailers - is independently numerous given that the class with the smallest average headcount comprises in excess of 150 individuals.   Thus, the Settlement Settlement Classes are so numerous that the individual joinder of all members is impracticable.

### B.   Commonality And Predominance Of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This commonality requirement is "construed permissively." <u>Hanlon</u>, <u>supra</u>, 150 F.3d at 1019.  Plaintiff needs not demonstrate that all questions of fact and law are common.  "The existence of shared legal issues with divergent factual predicates is sufficient." <u>Id</u>.

Plaintiff asserts that Class Members share fundamental common legal questions arising under the California <u>Labor Code</u> §§ 1194, 226.7, 226, 558, 201-203, as well as related provisions of California's applicable Industrial Welfare Commission Wage Orders, and California <u>Bus. & Prof. Code</u> §§ 17200 *et seq*.  In this litigation, all Class Members have a shared interest in determining: whether Defendant failed to pay for all hours worked (including any off-the-clock) in connection with <u>Labor Code</u> §§ 1194 and 226.7; whether Defendant failed to properly calculate and pay premiums for overtime hours worked in connection with <u>Labor Code</u> §1194; whether Defendant failed to provide duty-free meal periods in connection with <u>Labor Code</u> § 226.7; whether Defendant failed to authorize and permit rest breaks in connection with <u>Labor Code</u> § 226.7; and whether Defendant's conduct resulted in

derivative violations of Labor Code §226, §§ 201-203, and Bus. & Prof. Code §§ 17200 *et seq*.  Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, Plaintiff asserts that certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Rule 23(b)(3)'s predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  In other words, a "common nucleus of facts and potential legal remedies" must "dominate this litigation" to support a predominance finding.  Hanlon, supra, 150 F.3d at 1022.

Plaintiff asserts that the Merchandisers, Detailers, and RSA Classes have several predominant common issues, many arising from class-wide policies set forth in governing employee handbooks, along with class-wide practices resulting from the same or similar job duties, use of the same compensation structure, use of the same computerized handheld devices and/or time records, the same store scheduling/route-builder system, and the same product distribution system.  For purposes of predominance it is important to recognize the distinctions Defendants draw between Merchandisers and Detailers that are classified as hourly non-exempt employees under California law on the one hand, and RSAs who receive the VROT compensation, and whom are classified as exempt per California's Motor Carrier Act, on the other hand.  Due to the existence of this exemption-related defense that is asserted only on behalf of RSAs, and to avoid arguments that factual discrepancies pose too many individualized issues, Plaintiff seeks conditional certification for purposes of settlement of three separate Classes: the Route Sales Associate Class; the Merchandiser Class; and the Detailer Class.  Connor Amended Decl. ¶ 14(C).   Lastly, under the Settlement, the parties have allocated payments to

SPIRO LAW CORP.

SPIRO LAW CORP.

1   Settlement Class Members based on a point system that recognizes variations
2   related to the strength of the respective claims raised.  <u>Connor Amended Decl</u>.
3   ¶ 14(D).

4          Thus, Plaintiff asserts that the predominant issues are: whether
5   Defendant's failed to compensate the employees for all the time they actually
6   worked (including overtime); whether, by virtue of the staffing schedules and
7   workload demands, Defendant's failed to provide Class Members the requisite
8   duty-free meal periods; whether Class Members actually worked during those
9   meal periods resulting in allegedly unpaid wages and <u>Labor Code</u> §226.7
10  premiums; whether, by virtue of the staffing schedules and workload demands,
11  Defendant's failed to authorize rest breaks; whether Class Members actually
12  worked during rest breaks resulting unpaid <u>Labor Code</u> § 226.7 premiums;
13  whether Defendant's alleged non-payment of wages dues to rounding and/or
14  meal and rest break violations was "willful" within the meaning of <u>Labor Code</u>
15  § 203; whether Defendant's provided inaccurate wage and hour statements
16  resulting in an "injury" sufficient to support recovery under <u>Labor Code</u> § 226;
17  and whether Defendant's alleged practices constitute an unfair business
18  practice under California's Unfair Competition Law.  Plaintiff asserts that his
19  claims are based on written policies that govern all Class Members and
20  business practices that, especially within the discrete Classes, govern Plaintiff
21  and Settlement Class Members company-wide, and therefore, common
22  questions of law and fact predominate.

23      **C.   Typicality**

24          Rule 23(a)(3) requires that the representative plaintiff have claims
25  "typical of the claims...of the class."  This factor is also has been construed
26  permissively.  *See*, <u>Hanlon</u>, <u>supra</u>, 150 F.3d at 1019-1020.  Named plaintiffs
27  need not be "identically situated" with all other class member.  "It is enough if

28

their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." <u>Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990).   Typicality refers to the "nature of the claim...of the class representative, and not to the specific facts from which it arose." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992).  The Ninth Circuit has observed that the typicality requirement can be satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." <u>Id.</u>

Here, Plaintiff asserts that his claims are the same as those of the Class and that there are no significant differences between the facts applicable to Plaintiff and those of the other Class Members.  The claims of the proposed Class representative here is typical of the Class as a whole.  Plaintiff's interests are co-extensive with those of the Class and Plaintiff seeks relief identical to that sought by every other Class Member.

### D.    Adequate Representation

Rule 23 requires that the class representatives "fairly and adequately protect the interests of the class."  To satisfy this element, plaintiff must establish that: (a) the class representatives do not have a conflict of interest; and (b) class counsel will adequately represent the interest of the class. *See*, <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978). Here, there are not conflicts of interest between Plaintiff and Class Members.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class.  Spiro Law Corp. and Gigliotti & Gigliotti have been appointed Class Counsel in many wage and hour class actions against major employers – including joint Class Counsel in other wage and hour cases involving truck drivers.  <u>Connor Amended Decl.</u> ¶¶ 30-36; <u>Gigliotti Decl.</u> ¶¶ 3-

4.   Spiro Law Corp. has tried two wage and hour class actions over the last several years.  The California Supreme Court has granted review on four of Spiro Law Corp.'s cases regarding wage and hour issues, including, <u>Ramirez</u> <u>v. Yosemite Water Co., Inc.</u>, 20 Cal. 4th 7857 (1999); <u>Harris v. Liberty Mutual</u> <u>Insur.</u>, 171 P.3d 545 (2007); <u>Lu v. Hawaiian Gardens 8 Casino, Inc.</u>, 50 Cal.4th 592 (2010).  <u>Connor Amended Decl</u>. ¶ 30.  Spiro Law Corp. has also settled over 100 wage and hour cases over the past ten years.  <u>Connor</u> <u>Amended Decl</u>. ¶ 30.  Given Plaintiff's counsel has developed in-depth knowledge of the applicable law and considerable experience, Class Counsel is adequate to represent the Class.

### E.   Superiority

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication."  A court considers the following factors to determine whether a class action is superior:  (A) class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[7]  To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims.  Lack of a realistic alternative to a class action that it satisfies the superiority requirements.  *See*, <u>Valentino v. Carter-Wallace</u>, 97 F.3d 1227, 1235-36 (9th Cir. 1996); <u>Local Joint Exec. Board Of</u> <u>Culinary/Bartenders Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163

---

[7] <u>Rule 23(b)(3)(A)-(C)</u>.  When a court reviews a class action settlement is does ***not*** consider Rule 23(b)(3)(D), the fourth factor, regarding the difficulties of managing a class action.  <u>Amchem Products</u> <u>Inc. v. Woodward</u>, 521 U.S. 591, 620 (1997) (stating that for deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

SPIRO LAW CORP.

(9th Cir. 2001).  In <u>Culinary/Bartender Trust Fund</u>, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually."  <u>Id</u>.

Plaintiff asserts that the factors articulated in Rule 23(b)(3)(A)-(C) favor class certification for settlement purposes.  First, Plaintiff asserts that it is difficult to believe that any Class Members have an interest in individually controlling the prosecution of separate actions, given the relatively small sums allegedly involved for any one Class Member.  Any Class Member who wants to pursue a separate action can opt-out.  Second, the Parties are unaware of any competing litigation asserting some or all of the same claims pled in this action.[8]  Finally, Plaintiff asserts that it is desirable to concentrate the issues in this forum.  The Class is comprised of hourly employees who worked for Defendant in California, including within this District.

For purposes of settlement only, the parties agree that all Class Members who timely submit a Claim Form and consent to join this Action are "similarly situated" within the meaning of the FLSA, 29 U.S.C. § 216(b).  <u>Settlement Agreement</u> ¶ B.31.d.  Since Plaintiff has more stringent requirements for class certification under Rule 23, Plaintiff has carried her burden of establishing that the putative collective action members are similarly situated for purposes of preliminary approval of the proposed settlement.  <i>See</i>, <u>Clesceri v. Beach City Investigations & Protective Services, Inc</u>.  2011 WL 320998, *4 (C.D. Cal. 2011) (preliminarily approving hybrid settlement after concluding that plaintiffs satisfied Rule 23 requirements observing that "Courts have generally

---

[8] Spiro Law Corp. was co-counsel and attorneys of record in another case against Defendants entitled <i>Utiz v. Frito-Lay, Inc. et. al.</i> (Case No. SACV 09-8472) pending before this Court.  <i>Utiz</i>, however involved a different putative class of employees – RSR employees - than involved herein.

held that the 'similarly situated' standard under the FLSA is not as stringent a standards as the 'common questions predominate' standard under Rule 23(b)(3)").   Thus, Plaintiff moves for collective certification with respect Participating Class Members who submit Claim Form/Opt-Ins within the meaning of the FLSA, 29 U.S.C. § 216(b).

## VI.   THE SETTLEMENT PROVIDES FOR A COMPREHENSIVE NOTICE PROGRAM

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the Court must direct to class members the "best notice practicable" under the circumstances.   Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."   Silber v. Mabo, 18 F.3d 1449, 1454 (9th Cir. 1994).   Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).   The method of notice described in the Settlement Agreement is reasonably calculated to reach the Class Members by the best means practicable under the circumstances, and should, therefore, be approved.

### A.   The Form And Method Of Class Notice Should Be Approved

Here, the agreed upon notice procedures are extensive and fully sufficient to inform Class Members of the case, the proposed Settlement, and their rights.   First, the Parties have agreed that the best method to provide the [Proposed] Notice Of Settlement Of Class Action is via U.S. Mail directly to the putative Class Members.   See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173, 94 S.Ct. 21, 40 L.Ed.2d 732 (1974) (finding that mailed notice to individual class members meets due process requirements).   Since putative Class Members are current and/or former employees, the majority of their last

SPIRO LAW CORP.

1   known addresses are retrievable from Defendant's payroll records.   As
2   contemplated in the Settlement Agreement, Defendant will provide an
3   experienced third-party claims administrator, CPT Group, Inc. ("Claims
4   Adminstrator"), with the names, social security numbers, last known
5   addresses, and number of compensable Work Weeks during the Class Period of
6   putative Class Members.  Connor Amended Decl. ¶ 29.  Moreover, the Claims
7   Administrator shall utilize a Notice Of Change Of Address ("NCOA") and
8   other standard devices to obtain updated and forwarding addresses of Class
9   Members in conjunction with its mailing efforts.  Connor Amended Decl. ¶ 29.
10  Along with the Class Notice, the Claims Administrator shall also mail, if
11  approved, the [Proposed] Claim Form ("Claim Form") that advises Class
12  Members of their credited number of Work Weeks and the estimated amount
13  of their individual Settlement Share Payment.  Connor Amended Decl. ¶ 29.
14  This method of notice clearly suffices.

15       Rule 23(c)(2)(B) also sets forth requirements regarding the content of
16  the notice.   The notice must concisely and clearly state in plain, easily
17  understood language: 1) The nature of the action; 2) The definition of the class
18  certified; 3) The class claims, issues or defenses; 4) That class members may
19  enter an appearance through counsel; 5) That the court will exclude from the
20  class any member who requests exclusion, stating when and how member may
21  elect to be excluded; and 6)The binding effect of a class judgment on class
22  members under Rule 23(c)(3).  A true and correct copy of the proposed Notice
23  Of Proposed Class Action Settlement ("Class Notice") is separately attached
24  for ease of reference to Exhibit "2" to Connor Amended Decl., and based on
25  the foregoing, the Settlement complies fully with Rule 23(c)(2)(B).

26       In fact, the Class Notice goes beyond the standards and expresses all of
27  the following:

28

SPIRO LAW CORP.

32

1.   Briefly summarizes the alleged claims, substantive issues, and proceedings;

2.   Explains the basic terms of the Settlement and the amount Class Members are entitled to receive under the Settlement;

3.   Explains that Class Members have the right to opt-out or object to the Settlement within a given time and how to file formal objections if they wish to do so;

4.   Explains that Class Members who do not opt-out will be bound by the judgment on the common issues adverse to the Class;

5.   Identifies the Claims Administrator and explains the claim submission procedures to receive distribution of payments from the Settlement;

6.   Provides estimates of the full value of the Settlement, identifies Class Counsel, and specifies the amounts to be sought in attorneys' fees and incentive awards; and

7.   Provides the date, time, and location of the Final Fairness Hearing.

Accordingly, the form and content of the proposed Class Notice should be approved.   Additionally, the form and content of the [Proposed] Claim Form/FLSA Consent Form ("Claim Form") are clear, not burdensome, and likewise should be approved.  A true and correct copy of the [Proposed] Claim Form is also separately attached to Exhibit "3" to Connor Amended Decl. Moreover, to the extent any Class Member returns an invalidly completed Claim Form, the Claims Administrator will notify that individual so as to provide an opportunity to "cure" the deficiency.  Thus, the mailing of Notice by First-Class mail to Class Members, along with the Claim Form, qualifies as the best notice practicable and should be approved.

### B.     The Court Should Schedule A Final Approval Hearing

Following adequate notice to the class members, a hearing is held on the proposed settlement.  Manual For Complex Litigation, Fourth, § 21.633 and § 21.634.  Accordingly, it is requested that the Court schedule a hearing on final approval of the Settlement and set a cut-off date for Class Members to opt-out or object.  The hearing on final settlement should be scheduled at the time of preliminary approval so that the date can be disclosed in the Notice Of Settlement Of Class Action.  Cut-off dates for submission of claim forms, opt-out requests, and objections must be established so that the parties can determine, at some specified date, the members of the Settlement Class.  The Administrator is prepared to cause notice to be mailed by First-Class U.S. postal service, at the appropriate time based on the Class Period, after entry of the preliminary approval order of this Settlement.  The parties suggest that the cut-off date for mailing an opt-out request and submitting an objection be set forty-five (45) days after the date the Notices are mailed.  Pursuant to the Settlement Agreement, the parties request that the cut-off date for submitting a Claim Form be set at sixty (60) days after the date the Notices are mailed.  This will provide sufficient time for Class Members to decide whether or not they wish to participate in this class action and Settlement.  Further, within thirty (30) days after the Notices are mailed, the Administrator will send reminder postcards to putative Class Members who have not yet submitted a Claim.  In addition, within forty-five (45) days after the Notices are mailed, the Administrator will make phone call reminders to putative Class Members who have not yet submitted a Claim.  Connor Amended Decl. ¶ 29.

After the 60-day deadline for submission of Claim Forms, the Claims Administrator shall provide counsel for both parties a declaration stating the number of Notice Materials mailed, items returned as undeliverable and any

SPIRO LAW CORP.

re-mailing efforts, mailing of reminder postcards, placing of reminder telephone calls, the number of valid and invalid Claim Forms received, and the number of opt-outs received.   To this end, the Parties will propose a more detailed schedule for the settlement approval process when they submit their Supplemental Briefing/Declarations.

## VII.  CONCLUSION

For the reasons stated above, the Court should: 1) preliminarily approve the Settlement and conditionally certify the Classes; 2) approve the form and method of Notice to the Class; 3) establish the Parties' proposed procedure for Class Members to submit Claim Forms, object, or opt-out; and 4) schedule a Final Fairness Hearing for final approval of the Settlement.

Respectfully submitted,

Date:  November 11, 2013          **SPIRO LAW CORP.**

By:  */s/ Jennifer Connor*
    Jennifer Connor
    Ira Spiro
Attorneys for Plaintiff and the
putative Class