O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SIDNEY ELLIOTT, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> ROLLING FRITO-LAY SALES, LP, ET AL., <br><br> Defendants. | Case No.: SACV 11-01730 DOC(ANx) <br><br> **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS [52] [53]** |

Before the Court is Plaintiff's motion for approval of the final settlement in this class action (Dkt. 53) and motion for attorneys' fees and costs (Dkt. 52). The Court held a hearing on this matter on June 12, 2014, at which there were no objections raised. After reviewing the moving and opposing papers, considering the arguments at the hearing, and reviewing the entirety of the record, the Court GRANTS both motions.

**I.     Background**

Plaintiff Sidney Elliott ("Elliott") brought the instant action against Defendants Rolling Frito-Lay Sales, LP, Frity-Lay, Inc., and Frito-Lay Sales, Inc. ("Defendants" or "Frito-Lay") for alleged violations of the California Labor Code. *See* Compl. at 6-24.

Elliott is a former hourly employee of Frito-Lay. He held the job titles of "Detailer" and "Route Sales Associate" ("RSA"), although he alleges that his Detailer workload actually equated him with the role of "Merchandiser." *See* Elliott Decl. (Dkt. 53-7) ¶ 5. The primary difference between these positions is that a Detailer is a part-time position, and a Merchandiser is a full-time position. *Id.* Both positions require driving a route to visit store locations at which the Detailer or Merchandiser restocks products, maintains displays, rotates products, and so forth. RSAs temporarily cover routes for Detailers and Merchandisers who are sick, absent, on vacation, or otherwise unable to complete the route.

Elliott claims that even though Merchandisers, Detailers, and RSAs are supposed to take meal and rest breaks under Frito-Lay's policy, the route scheduling does not actually allow drivers to take such breaks, drivers often ate while driving between locations, and generally drivers could not take duty-free rest breaks. Elliott also challenges Frito-Lay's use of the fluctuating workweek method to calculate overtime pay. The parties have reached a settlement as to all claims, which the Court preliminarily approved on December 23, 2013 (Dkt. 51). The parties now seek final approval and certification of all claims for the following class:

> All present and former employees of Defendants in California who are or were employed in the job position of either Route Sales Associate, RSR Associate, RSR Sales Specialist, RSR Specialist, Sales Trainee, RSR Trainee, Merchandiser, Sales Merchandiser or Detailer at any time during the Class Period.

Mot. at 10. The parties also move to certify the following subclasses:

> <u>Route Sales Associate Class</u>: All present and former hourly employees of Defendants Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. who are or were employed in California in the job position of Route Sales Associate, RSR Associate, RSR Sales Specialist, RSR Specialist, Sales Trainee and/or RSR Trainee at any time during the Class Period.

    <u>Merchandiser Class</u>: All present and former hourly employees of Defendants Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. who are or were employed in California in the job position of Merchandiser or Sales Merchandiser at any time during the Class Period.

    <u>Detailer Class</u>: All present and former hourly employees of Defendants Rolling Frito-Lay Sales, LP, Frito-Lay, Inc., and Frito-Lay Sales, Inc. who are or were employed in California in the job position of Detailer at any time during the Class Period.

*Id.* at 10-11.

## II.  Legal Standard

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Court approval involves a two-step process: (1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  The Court may issue final approval of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The first step in such cases is to assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

### a. Class Certification

A party seeking class certification must demonstrate the following prerequisites: (1) numerosity of plaintiffs; (2) questions of law or fact common to the class; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).  Under Federal Rule of Civil Procedure 23(b)(3), the Court also

must consider whether common questions of law and fact predominate, as well as whether the class action offers a superior method of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3)**.**

### b. Settlement Approval

Once the court certifies a settlement class, approval of the settlement terms rests in the sound discretion of the district court. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Under Federal Rule of Civil Procedure 23(e), the settlement, taken as a whole, must be (1) fundamentally fair, (2) adequate, and (3) reasonable to the Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23(e)'s primary concern is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

In considering final approval of a proposed settlement, the Court's discretion is guided by the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 556, 575 (9th Cir. 2004). "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). The Court may also consider the procedure by which the parties arrived at the settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625). "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Hanlon*, 150 F.3d at 1026 ("Neither the district court not this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). The Court must also bear in mind that judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Pacific Enterprises Securities Litigation*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

### III. Class Certification

#### a. Rule 23(a)

##### i. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *See Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds by County of Los Angeles v. Jordan,* 459 U.S. 810 (1982); *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654 (C.D. Cal. 2000). Frito-Lay's records show a class membership of 3,555 current and former employees. Morales Decl. ¶ 4. Even the subclass with the smallest average headcount exceeds 150 people. Connor Decl. ¶ 15. These classes are sufficiently numerous to make individual joinder impracticable, and therefore meet the requirements of Rule 23(a)(1).

##### ii. Commonality

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the class's claims are based on a "common contention . . . capable of classwide resolution," meaning that determination of the "truth or falsity" of that contention "will resolve an issue that is central to the validity of [the

class's] claims." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In *Wal-Mart*, The Supreme Court emphasized that commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart,* 131 S. Ct. at 2551) (internal alteration omitted). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza*, 666 F.3d at 589 (emphasis added)).

Plaintiffs identify a number of common questions affecting all class members, including: (1) whether Frito-Lay's staffing schedules and workload demands deprive Plaintiffs of the requisite duty-free meal periods; (2) whether Class Members actually worked during those meal periods resulting in unpaid wages; (3) whether Defendants' conduct was "willful" under Labor Code § 203; and (4) whether Defendants' practices constitute an unfair business practice under California's Unfair Competition Law. *See* Mot. at 13. These questions present common issues that can be effectively answered at the class level. The use of subclasses diffuses concerns about the applicability of a Motor Carrier Act defense as to only the RSAs. The commonality requirement is satisfied.

### iii. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011) (quotation marks omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In this case, Elliott's own claims are typical of those of the class members: he worked as both a Detailer and RSA and was

subject to the policies in question. *See* Elliott Decl. ¶¶ 3-6. The typicality requirement is satisfied.

### iv. Adequacy

An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee,* 311 U.S. 32, 43 (1940). A representative is adequate where: (1) there is no conflict of interest between the representative and its counsel and absent class members, and (2) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020 (internal citations and quotation marks omitted).

#### 1. Adequacy of Class Representative

Elliott testified that he is aware of duties and responsibilities as a class representative, and aware that he represents the interests of all class members. *See* Elliot Decl. ¶ 6. He is aware of no conflicts that are antagonistic to the class, and committed to representing the action vigorously. *Id*. ¶¶ 6-8. Elliott is an adequate representative for the class.

#### 2. Adequacy of Counsel

Plaintiff's counsel are experienced class action attorneys and have both served as class counsel in previous wage and hour class actions. *See* Connor Decl. ¶¶ 50-54; Gigliotti Decl. ¶¶ 3, 6-7. Plaintiff's counsel have participated in extensive investigative and discovery work. *See* Connor Decl. ¶ 55; Gigliotti Decl. ¶ 4. There is no evidence of any conflicting relationship between counsel and Plaintiff. It appears, therefore, that counsel are adequate to represent the class in this action.

### b. Rule 23(b)

#### i. Predominance

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *Amchem*, 521 U.S. at 623-24. However,

predominance may exist even where there is "some variation among the individual employees, as well as some potential difficulty in proof." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001) (certifying class of employees, despite some variation in proof as to whether individuals would be entitled to backpay).

The common questions identified by Plaintiff predominate over any individual issues. To the extent that differences between the three types of job position might present differing issues, these concerns are cured by the use of subclasses. There is no apparent issue with any other individualized questions, and the substantial questions regarding Frito-Lay's policies and their impact certainly predominate.

### ii. Superiority

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts often consider the four factors listed in Rule 23(b)(3): "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3); *see* Newberg on Class Actions § 4:64 (5th ed.).

Here, "[g]iven the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 537 (C.D. Cal. 2011) *reconsideration denied,* 280 F.R.D. 540 (C.D. Cal. 2012). Indeed, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l. Bank v. Roper*, 445 U.S. 326, 339 (1980). Furthermore, each member of the class pursuing a claim individually would burden the

1 judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule
2 23. *See Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 946 (9th Cir. 2009) ("The
3 overarching focus remains whether trial by class representation would further the goals of
4 efficiency and judicial economy."). There is no apparent reason why any class member might
5 have a compelling interest in controlling his or her own claim. The superiority requirement is
6 therefore met.

**IV.     Collective FLSA Certification**

Plaintiff also moves for collective certification of Participating Class Members within the meaning of the FLSA, 29 U.S.C. § 219(b). The parties agree that all Class Members who timely submitted a Claim Form and consent to join the Action are "similarly situated" under the FLSA. *See* Settlement ¶¶ 2, 7(b). The Court has already determined that Plaintiff has satisfied the requirements for Rule 23 certification. Generally, FLSA certification requires a less stringent standard than Rule 23 certification. *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) (citing *O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567, 584–85 (6th Cir. 2009)). However, the second step of FLSA analysis does require the Court to determine whether the plaintiffs are in fact similarly situated, considering factors like "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations." *Id*. at 1003 (quoting *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010)).

Plaintiff's discussion of this question is cursory, but the record reflects that FLSA certification is appropriate. As discussed previously, the class members have the same job positions subject to the same policies in the same state. To the extent that different job positions might provide different defenses, the potential problems are cured by the use of subclasses. The Court therefore certifies the FLSA collective action.

**V.     Adequacy of Settlement**

      **i.  Strength of Plaintiffs' Case**

1    The parties have engaged in significant discovery and discussion of the issues in this
2 case. Plaintiff believes strongly in the class claims, but acknowledges several potential legal and
3 factual difficulties. There are novel legal issues presented by the California Motor Carrier Act
4 exemption, compounded by the range of vehicle sizes in Frito-Lay's fleet (a "hybrid fleet"). *See*
5 Mot. at 17-19. The contours of this exemption, and to what extent California law adopts such an
6 exemption, are open questions in this lawsuit. *See id*. at 19-20; Connor Decl. ¶¶ 34-35.
7 Factually, Elliott testified that he, and many other employees, would record having taken a break
8 even when they did not. *See* Connor Decl. ¶ 36. Although Plaintiff has arguments that these
9 records are unreliable, this presents a significant factual obstacle. *Id*.

### ii. Risk, Expense, Complexity

This litigation has been in progress for nearly three years. It is complex, with difficult questions and over thirty-six affirmative defenses at issue. *See* Answer (Dkt. 5). Litigation through trial would be expensive, risky, and require extensive expert testimony. Further, the complex and novel legal issues would require significant briefing on appeal, further increasing the cost and difficulty of the case. Settlement ensures payment to the class immediately, rather than risking lengthy litigation and the real possibility of no recovery at all.

### iii. Risk of Maintaining Class Action Status

The Court had not yet certified the class at issue at the time of this motion. Plaintiffs point out that the risk of losing certification, or facing decertification, is always a real possibility. Settlement at this point protects the class's recovery.

### iv. Amount Offered in Settlement

The instant settlement provides $1.6 million to the class, to be distributed according to the strength of the respective subclass's claims, the number of weeks worked, and the total number of reporting class members. *See* Connor Decl. ¶ 13. The settlement is non-reversionary, and all funds for distribution will go to class members. *Id*. After anticipated attorneys' fees, litigation costs, payments pursuant to the California Private Attorney General Act ("PAGA"), the estimated fund for distribution will be approximately $1,031,250. *Id*. Of the 3,555 noticed class members, 1,395 class members have submitted a Claim Form. Connor

1  Decl. ¶ 26; Morales Decl. ¶ 23.  The precise recovery of each member will range significantly,
2  depending on their position, number of weeks worked, and total reporting class members.
3  However, the average payment will be roughly $1,489.61.  *See* Morales Decl. ¶ 23.  Plaintiff's
4  counsel estimate that the maximum recovery for the class, had Plaintiff prevailed at trial, would
5  have been roughly $5,084,471.  Connor Decl. ¶ 44.  The settlement therefore represents roughly
6  31 percent of the maximum recovery.  *Id*.  Depending on the rates of response from the class
7  members, the individual recovery at this time represents roughly 20 percent to 40 percent of the
8  best case scenario for individual class members.

9  "It is well-settled law that a cash settlement amounting to only a fraction of the potential
10 recovery will not per se render the settlement inadequate or unfair."  *Officers for Justice*, 688
11 F.2d at 628.  The recovery in this case is consistent with other approved settlement amounts in
12 this Circuit.  *See, e.g., Hopson v. Hanesbrands Inc.*, CV-08-0844 EDL, 2009 WL 928133 (N.D.
13 Cal. Apr. 3, 2009) (approving settlement constituting 39 percent of maximum recovery for lost
14 wages); *In re Portal Software, Inc. Sec. Litig.*, C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal.
15 Nov. 26, 2007) (approving settlement that would constitute 25 percent of maximum possible
16 recovery).  Although lower than recovery in some cases, the percentage of the maximum
17 possible recovery seems appropriate to this Court to accommodate the risk associated with
18 bringing questions of first impression in a complicated area of employment law.

### v. Extent of Discovery Completed and the Stage of Proceedings

20 Although the parties did not engage in significant motions practice on this case, extensive
21 discovery has occurred.  Plaintiffs made multiple requests for production, resulting in the
22 exchange of 9,200 pages of discovery and spreadsheet data including over 500,000 rows of sales
23 data, fleet asset information, and route types.  Connor Decl. ¶¶ 5-9.  The parties conducted four
24 depositions: three Rule 30(b)(6) depositions of Defendants Person Most Knowledgeable
25 covering forty-four topics, and the day-long deposition of Elliott.  Connor Decl. ¶ 7.  Plaintiff
26 took steps to conduct informal and confidential surveys of class members.  *See* Connor Decl. ¶
27 6.  This discovery development, combined with extensive conversation between the parties,
28 sufficiently prepared counsel to evaluate the settlement offer and make an informed decision.

The parties instituted settlement negotiations prior to class certification briefing, and attended a full-day mediation session with an experienced mediator. Connor Decl. ¶ 11. The Court finds this was sufficient information and process for the parties to effectively evaluate their respective cases and the advantages of the settlement.

### vi. Experience and Views of Counsel

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd,* 661 F.2d 939 (9th Cir. 1981). Plaintiff's counsel are experienced class action litigators, with extensive work in wage and hour class actions and trucking issues. *See* Connor Decl. ¶¶ 50-54; Gigliotti Decl. ¶¶ 3-5. Settlement negotiations also involved an experienced wage and hour mediator. *See* Connor Decl. ¶¶ 11-12. The negotiations were extensive and followed vehement denials of liability by Defendants, including assertion of extensive and complex affirmative defenses. Connor Decl. ¶¶ 4, 10-12.

### vii. Presence of a Governmental Participant

There is no governmental participant in this action. The settlement does provide for the appropriate payment of $5,000 (with 25 percent flowing to the class) to the Labor & Workforce Development Agency ("LWDA") under PAGA. Connor Decl. ¶ 13(A). The appropriate CAFA notices were provided. Connor Decl. ¶ 16.

### viii. Reaction of Members to the Proposed Settlement

The fact that a settlement receives no opposition from the class is valuable evidence of fairness. *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). The Claims Administrator mailed copies of the Notice Packets to 3,555 class members. Morales Decl. ¶ 8. Of the 3,555 identified class members, 1,395 (39.24 percent) submitted timely and valid claim forms. Morales Decl. ¶ 21. The 3,555 class members represent 250,148.05 class weeks within the class period. Morales Decl. ¶ 22. The responding class members account for 51.87 percent of the total class weeks. *Id*. There are no objections to the settlement. Morales Decl. ¶ 14. One class member is disputing the calculation

of their individual workweeks, and the Claims Administrator is awaiting further documentation of that class member's claims. Morales Decl. ¶ 19. Five class members have opted out. Morales Decl. ¶ 16. This represents significant support from the class, and this factor weighs in favor of granting approval.

### ix. Conclusion

In weighing the factors listed above, the Court finds that the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2). The Court finds no evidence suggesting that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties. *See Rodriguez*, 563 F.3d at 965.

## VI. Attorneys' Fees

Plaintiff's counsel seek to recover litigation costs of $20,000, fees of $480,000 (30 percent of the total settlement), and an award to the putative class representative of $15,000. Fees Mot. at 1-2. Fees owed the Claims Administrator comprise $36,500, as well. *See* Morales Decl. ¶ 24.

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir. 1977). "This rule, known as the 'common fund doctrine,' is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *Omnivision*, 559 F. Supp. 2d at 1046 (quoting *Paul, Johnson, Alston, & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989)). District courts have the discretion to calculate fees by either calculating a lodestar or awarding a percentage of the common fund. *See, e.g.*, *Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994).

In common fund cases, the "benchmark" percentage award is 25 percent of the recovery obtained, with 20 to 30 percent as the usual range. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The "benchmark" is the starting point for the analysis, and the ultimate amount must be supported by findings that take into account all of the circumstances of

the case, including the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck. *Id*. at 1048-50. Especially in a class action, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999); *accord Staton*, 327 F.3d at 963-64.

There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989).

### i. Benchmark

The settlement agreement provides for a common fund of $1,600,000. Plaintiff's counsel requests 30 percent of the Settlement Fund, or $480,000, in fees. This is somewhat higher than the benchmark in the Circuit, although not uncommon for courts in this jurisdiction. Therefore, at first glance, the attorneys' fees request appears reasonable. Plaintiff argues that 30 percent is reasonable and appropriate in light of the difficult issues facing the class and the significant risk counsel accepted in taking the case entirely on contingency. Plaintiff also argues that the settlement provides a very favorable result for the class, further justifying a fee award above the benchmark. Plaintiff also points out that thirty percent is commensurate with traditional contingency recovery in an individual suit. *See Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.").

### ii. Lodestar Crosscheck

In order to ensure that attorneys' fees are reasonable, courts can cross-check the benchmark amount by applying the lodestar analysis. *See Vizcaino*, 290 F.3d at 1050. "[The lodestar] figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941.

Plaintiff's exhibits show a total of 527.1 hours at varying rates. *See* Connor Fee Decl. ¶ 40. Plaintiff's counsel bill between $700 and roughly $500 per hour for each attorney, depending on experience. *Id*. The total lodestar fee calculation is $278,315, and so the requested fee of $480,000 requires a 1.73 multiplier of the calculated lodestar. *Id*. There are no objections to the hours performed or the billing rates, and the Court finds these to be reasonable. The lodestar represents only about 18 percent of the total settlement, substantially below both the Ninth Circuit benchmark.

### iii. Conclusion

Although the case was resolved very early in litigation, the Court finds that the requested 30 percent is a reasonable fee award. This amount appropriately compensates counsel for their willingness to accept difficult legal challenges and the risk of nonpayment. The Court GRANTS the motion for attorneys' fees.

### VII. Legal Costs

Finally, counsel request litigation costs of $20,000. Fees Mot. at 1-2. Fees owed the Claims Administrator comprise $36,500, as well. *See* Morales Decl. ¶ 24. These expenses include court fees, discovery costs, travel costs, copying costs, mailing costs, and so forth. The Court finds these costs reasonably incurred and GRANTS the motion as to costs.

### VIII. Class Representative Award

Plaintiff's counsel requests an award of $15,000 for Sidney Elliott. It is common in class action cases to provide incentive awards to named plaintiffs. *See* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008). It is within the Court's discretion to grant such an award. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000). These awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

Elliott sat for a day-long deposition and estimates that he spent roughly 100 hours working on the case. Elliot Decl. ¶ 8. Elliott also brought this lawsuit while still employed by

1 Frito-Lay, accepting any additional personal discomfort associated with being a current
2 employee filing a lawsuit.  Plaintiff emphasizes that the requested award is less than one percent
3 of the overall settlement, and therefore less than the awards other courts have approved.  *See*
4 *Sandoval v. Tharaldson Employee Mgmt., Inc.*, EDCV 08-482-VAP(OP), 2010 WL 2486346
5 (C.D. Cal. June 15, 2010) (reducing incentive award from $12,500 to $7,500 for representative
6 who spent roughly thirty-three hours on the case); *Hopson*, CV-08-0844 EDL, 2009 WL
7 928133, at *10 (approving $5,000 award).

8  The requested award is somewhat higher than the $5,000 traditionally considered
9 reasonable in similar jurisdictions.  *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit*
10 *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (approving $5,000
11 incentive award); *Faigman v. AT & T Mobility LLC,* No. C06–04622 MHP, 2011 WL 672648,
12 *5 (N.D. Cal. Feb. 16, 2011) (approving incentive payment of $3,333.33 and noting that "[i]n
13 [the Northern] [D]istrict, incentive payments of $5,000 are presumptively reasonable"); *Hartless*
14 *v. Clorox Co.,* F.R.D., 273 F.R.D. 630, 2011 WL 197542, *15 (S.D. Cal. Jan. 20, 2011)
15 (approving an award of $4,000 to one named plaintiff and $2,000 to another).  Elliott did spend
16 significant time aiding counsel, however, and at not insignificant personal risk.  The total pool
17 was also significant.  The Court finds a reduction to $10,000 to appropriately compensate Elliott
18 for the risks undertaken, time spent, and results achieved.

19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

**IX. Disposition**

The Court GRANTS the motion for final approval of the class settlement (Dkt. 53). The Court APPOINTS Sidney Elliott as class representative, certifies the designated class and subclasses, and appoints Spiro Law Corp. and Gigliotti & Gigliotti as class counsel.

The Court GRANTS the motion for attorneys' fees and costs (Dkt. 52), and awards class counsel $480,000 of the settlement fund, reimbursement of costs totaling $20,000, and payment of the Claims Administrator in the amount of $36,500. The Court approves a payment of $5,000 to the LWDA, with 25% returning to the class members. The Court approves an incentive award of $10,000 for the lead plaintiff in the case.

DATED: June 12, 2014

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE